## 9502

### CITY OF COLUMBIA v. SMITH.

#### (89 S. E. 1028.)

1. CONSTITUTIONAL LAW—CONSTRUCTION—PRESUMPTION.—The presumption is that legislative enactments are constitutional, and no such enactment ought to be declared invalid unless its unconstitutionality is made to appear beyond all reasonable doubt.

2. STATUTES—SPECIAL LAWS—JURY—"SUMMON AND IMPANEL."—Const. 1895, art. III, Sec. 34, subd. 7, providing that the General Assembly shall not enact any local or special laws to "summon and impanel" grand or petit jurors, embraces the listing and drawing of jurors; as the object was to make the jury law uniform throughout the entire State, which can only be accomplished by interpreting the term.

3. STATUTES—SPECIAL LAWS—JURY—RECORDER'S COURT—"PETIT JURY."— Such provision, construed with article V, section 22, providing that all persons charged with an offense shall have the right to a trial by jury, which in cases in municipal Courts, or Courts inferior to Circuit Courts shall consist of six jurors, and that the petit jury of the Circuit Court shall consist of 12 jurors, all of whom must agree to a verdict, was not violated by act Feb. 15, 1916 (29 St. at Large, p. 821), providing a method for preparing and drawing jurors in the recorder's Court for the city of Columbia, in place of the provisions of act Feb. 26, 1902 (23 St. at Large, p. 1048), under which the recorder's Court of the city of Columbia was established, providing for the summoning and impaneling of juries in accordance with the law for summoning and impaneling juries in the magistrate's Courts as prescribed by Civ. Code 1912, sec. 1395, since a jury in a municipal Court is not a "petit jury," which is an ordinary jury of 12 duly qualified men impaneled and sworn to try by unanimous verdict any question or issue of fact in any civil or criminal action according to law and the evidence as given in the Court.

4. CONSTITUTIONAL LAW — JUDICIAL QUESTIONS — GENERAL OR SPECIAL LAW.—Whether an act is prohibited by Const. 1895, art. III, sec. 34, subd. 9, declaring that, in other than specified cases, and where a general law can be made applicable, no special law shall be enacted, is a judicial question.

5. STATUTES—GENERAL OR SPECIAL LAWS—CONSTITUTIONAL PROVISIONS.— Const. 1895, art. III, sec. 34, subd. 9, does not apply to legislation upon those subjects as to which the General Assembly under the authority of the Constitution may legislate particularly, even though the same is special in character.

6. STATUTES—GENERAL OR SPECIAL STATUTE—CONSTITUTIONAL PROVISIONS —MUNICIPAL COURT—"GENERAL LAW."—Const. 1895, art. III, sec. 34, subd. 9, provides that, in other than certain cases, and where a general law can be made applicable, no special law shall be enacted.

Article V, sec. 1, provides that the General Assembly may establish county Courts, municipal Courts, and such Courts in any and all of the counties inferior to the Circuit Court as may be necessary. Article V, sec. 20, requires Courts of the magistrate to be appointed and commissioned for each county with jurisdiction prescribed by sections 21 and 23, and article VIII, sec. 1, declares that the General Assembly shall provide by general laws for the classification of municipal corporations, so that each class shall have the same powers and restrictions as all of that class. Act Feb. 16, 1916 (29 St. at Large, p. 821), provided a method of preparing and drawing jurors in the recorder's Court for the city of Columbia, in place of act Feb. 26, 1902 (23 St. at Large, p. 1048), requiring the jury to be summoned and impaneled in accordance with the law in a magistrate's Court, as prescribed by Civ. Code 1912, sec. 1395. *Held,* that it was not the intention of the Constitution to make the creation, jurisdiction and incidents of a municipal Court the subject of a "general law," which must be a law in force in every county in the State, and which, while it may contain special provisions making its effect different in certain counties, cannot exempt them from its entire operation, so that the provision of the act of 1916 was valid.

Before SMITH, J., Columbia, May, 1916.   Affirmed.

Proceedings by the City of Columbia against Harvey Smith for a violation of a traffic ordinance. From a judgment reversing a judgment of conviction in the recorder's Court and remanding for trial, the City of Columbia appeals.

The order of the Circuit Judge was as follows:

This cause comes before me on an appeal from the recorder's Court of the city of Columbia, wherein the defendant was convicted of the violation of a traffic ordinance. On his trial he demanded a jury, whereupon a jury was drawn in pursuance of the provisions of section 1395 of the Civil Code 1912, which relates to the method of summoning and impaneling juries in the Court of the magistrate. The defendant objected to this manner of drawing the jury, and contended that the same should be drawn under the provisions of an act passed at the 1916 session of the General

Assembly entitled "An act to provide a method of preparing and drawing juries in the recorder's Court for the city of Columbia." The defendant's objection was overruled, and the cause ordered to trial. The recorder makes return that the act in question is unconstitutional in that it is violative of article III, section 34, subds. 7 and 9, and of article VIII, section 1, of the Constitution, which prohibit, respectively, special legislation on certain subjects, and provide for the organization and classification of municipal corporations.

The recorder's Court of the city of Columbia, as now constituted, was established by an act entitled "An act to establish municipal Courts, to define the powers and jurisdiction of such Courts, and to provide for the conduct of the business thereof in cities over twenty thousand and not exceeding fifty thousand inhabitants." 23 St. at Large, p. 1048. This act, so far as pertinent to the present inquiry, is as follows:

"Section 1. * * * A municipal Court is hereby established for every city in this State having a population of more than twenty thousand and not exceeding fifty thousand inhabitants.

"Sec. 2. That the said municipal Court shall have jurisdiction to try and determine all cases arising under the ordinances of the city in which said Court is established, and generally shall have all such judicial powers and duties as are now conferred upon the mayor of such city, either by its charter or by the laws of the State of South Carolina. The said municipal Court shall also have all such powers, duties and jurisdiction in criminal cases as are now conferred by law upon the magistrates appointed and commissioned for the county in which said Court is established, except that said Court shall not have authority of a magistrate to appoint a constable. * * *

"Sec. 6. In the trial of any case in the said municipal Court, upon the demand for a jury, the same shall be summoned and impaneled in accordance with the law for sum-

moning and impaneling juries in magistrates' Courts. The jury shall consist of six. Any party shall have the right to have the testimony given at such trial taken stenographically by a stenographer to be appointed by the recorder: *Provided,* Such party shall first tender or pay the charges of such stenographer for taking and transcribing the same."

Prior to the passage of the above act the recorder's Court for the city of Columbia had been established under an act appearing as sections 3001 to 3011, both inclusive, of the Civil Code 1912, section 3006 of which, relating to jury trials, is indentical with section 6 of the act above quoted. Section 3001 of the Civil Code is as follows: "*Municipal Courts Authorized in Cities of Not Less Than Two Thousand.*—It shall be lawful for the city council of any city in this State whose population by the last census was not less than two thousand, and not more than twenty thousand, or which may now or hereafter, by actual enumeration, have a population within said limits, by ordinance duly enacted, to establish in said city a municipal Court, for the trial and determination of all cases arising under the ordinance of such city."

Section 1395 provides the following method for the summoning and impaneling of juries in the magistrate's Court: "In civil cases the parties may agree on a jury; but when they do not agree, and also in criminal causes, a jury shall be selected in the following manner: The sheriff, constable, or other officer appointed by the magistrate, shall write and fold up eighteen ballots, each containing the name of a respectable voter of the vicinity; he shall deliver the ballots to the magistrate, who shall put them into a box, and shake them together, and the officer shall draw out one, and the person so drawn shall be one of the jury, unless challenged by either party; and the officer shall thus proceed until he shall have drawn six who shall not have been challenged; neither party being allowed more than six challenges; but if the first twelve drawn shall be challenged, and the parties do

not agree to a choice, the last six shall be the jury; and when any of the six jurors so drawn cannot be had, or are disqualified by law to act in such case, and the parties do not supply the vacancy by agreement, the officer shall proceed to prepare, in the manner before directed, ballots for three times the number thus deficient, which shall be disposed of and drawn as above provided." It will be observed that it was under this section that the jury was drawn below, and against the defendant's objection.

The act under which the defendant contended that the jury should have been drawn provides:

"Section 1. That the mayor and councilmen of the city of Columbia are hereby declared to be the jury commissioners for the recorder's Court for the city of Columbia, and shall, within ten days after the approval of this act, and within the first ten days of each year thereafter, prepare and place in a box, to be known as the jury box, the name of each and every citizen within the corporate limits of said city eligible to do jury duty, and shall lock and keep said jury box convenient for the drawing of a jury, as hereinafter specified.

"Sec. 2. In all criminal cases in said recorder's Court, in which a jury may be demanded by either the city or the defendant, a jury shall be selected in the following manner: The city clerk, or if (the city) clerk cannot be had, any other person appointed by the recorder of said city, shall draw out of the jury box referred to in section 1 of this act, eighteen (18) ballots, each containing the names of an eligible juror, and list the said 18 names in duplicate, delivering one copy of the same to the attorney for the city, if he be present, if not, to the chief of police, or some other officer designated by said chief, and one copy to the defendant or his attorney.

"Sec. 3. The city clerk shall place the 18 ballots so drawn' * * * in some box or hat and shall draw out one, and the person so drawn out shall be one of the jury, unless challenged by either party; and the city clerk shall then proceed until he shall have drawn six, who shall not have been chal-

lenged, neither party being allowed more than six challenges, but if the first twelve drawn shall be challenged and the parties do not agree to a choice, the last six shall be the jury, and when any of the six jurors so drawn cannot be had or are disqualified by law to act in such case, and the parties do not supply the vacancy by agreement, the city clerk shall proceed to draw out of said jury box ballots for three times the number thus deficient, which shall be disposed of and be drawn as above provided.

"Sec. 4. That all acts and parts of acts inconsistent with this act are hereby repealed."

29 St. at Large, p. 821.

The question presented is whether the above act is special legislation, and, therefore, void under the provisions of the Constitution referred to at the outset and hereinafter stated.

It is well settled that the presumption is that legislative enactments are constitutional, and no such enactment ought to be declared invalid unless its unconstitutionality is made to appear beyond all reasonable doubt.

The Constitution of 1895 provides in article III, section 34, as follows:

"The General Assembly of this State shall not enact local or special laws concerning any of the following subjects or for any of the following purposes, to wit: * * *

"VII. To summon and impanel grand or petit jurors. * * *

"IX. In all other cases, where a general law can be made applicable, no special law shall be enacted."

The object of section 34, art. III, of the Constitution, is stated by the Supreme Court in *State* v. *Queen,* 62 S. C. 247, 40 S. E. 553, in the following language: "These views are not inconsistent with the ruling in *Carolina Grocery Co.* v. *Burnet,* 61 S. C. 205 (39 S. E. 381, 58 L. R. A. 687), as

that case did not arise under either of the first ten subdivisions of article III, section 34; by reference to which it will be seen that the main object was to secure uniformity as to the subjects therein mentioned, and any legislation relating to those subjects which substantially mitigates against uniformity must necessarily be declared unconstitutional."

Briefly stated, the case of *State* v. *Queen, supra,* is authority for this proposition, viz.: That the listing and drawing of jurors is embraced within the meaning of the terms "summon and impanel" as used in article III, section 34, subd. 7, of the Constitution, and, further, that any variations in the method of listing and drawing jurors in any of the counties of the State made the act therein questioned repugnant to the provision, because such variations prevented the law from being uniform throughout the State. Construing subdivision 7, and declaring the ultimate object of the same, the Court says, at page 250 of 62 S. C., page 553 of 40 S E.: "The jury laws throughout the State were various and were productive of great confusion and uncertainty. The object of the Constitution was to make the jury law uniform throughout the entire State, and this can only be accomplished by interpreting the words 'summon and impanel' to include listing and drawing of jurors."

Under this decision the act in question is clearly unconstitutional if jurors in municipal Courts can be said to belong to either of the classes, grand or petit, as used in and contemplated by subdivision 7 of article III, section 34.

3     It is quite clear that the term "grand juror" does not include the jurors provided by the Constitution for trials in municipal and magistrate Courts. It, therefore, remains to be seen whether such jurors are properly embraced within the term "petit jurors." The jury system as known at common law and as recognized by the Courts in this State refers to the trial jury and is universally recognized as consisting of twelve men.

"*Petit Jury.*—The ordinary jury of 12 men for the trial of a civil or criminal action, so called to distinguish it from the grand jury. A petit jury is a body of 12 men impaneled and sworn in a district Court to try and determine, by a true and unanimous verdict, any question or issue of fact, in any civil or criminal action or proceeding, according to law and the evidence as given them in the Court." Black's Law Dict. (2d ed.), p. 675.

"A petit, petty, or traverse jury is a body of 12 men who are sworn to try the facts of a case as they are presented in the evidence placed before them. Any less than this number of 12 would not be a common law jury, and not such a jury as the Constitution guarantees to accused parties, when a less number is not allowed in express terms; and the necessity of a full panel could not be waived—at least in case of felony—even by consent." Cooley's Const. Lim. (7th ed.) 455, *et seq.,* and notes thereto.

"A body of 12 citizens, duly qualified to serve on juries," etc. *State* v. *Cox,* 8 Ark. 436, 446; *Norval* v. *Rice,* 2 Wis. 22, 28.

"A tribunal of 12 men, presided over by a Court, and hearing the allegations, evidence, and arguments of the parties." *Lamb* v. *Lane,* 4 Ohio St. 167, 179.

"A body of 12 men, possessing the requisite qualifications, duly summoned," etc. *People* v. *Hopt,* 3 Utah 396, 401, 4 Pac. 250, 255.

"A jury of less than 12 is not a constitutional jury, and a denial of this number in a case triable by jury is an infringement of a constitutional right." 24 Cyc. 183, *et seq.,* and notes.

From the above it would appear clearly that a jury in a municipal Court is not a petit jury, and could not have been so regarded by the makers of the Constitution in enacting subdivision 7 of section 34. This view becomes more forceful upon consideration of article V, section 22, of the Con-

stitution, which is as follows: "All persons charged with an offense shall have the right to demand and obtain a trial by jury. The jury in cases civil or criminal in all municipal Courts, and Courts inferior to Circuit Courts, shall consist of six. The grand jury of each county shall consist of eighteen members, twelve of whom must agree in a matter before it can be submitted to the Court. *Petit Jury.*—The petit jury of the Circuit Courts shall consist of twelve men, all of whom must agree to a verdict in order to render the same."

In providing for the number of jurors in municipal and inferior Courts the Constitution does not apply the term "petit" to a jury of a municipal Court, which fact leads to the very natural conclusion that the use of the word "petit" in describing the trial jury of the Circuit Courts is in contrast to the grand jury, and not intended to designate a particular "petit" jury. If this view be correct, then the last sentence of article V, section 22, is a constitutional definition of "petit jury," and must be the jury referred to by that term in section 34 of article III. The makers of the Constitution having provided for the petit jury of 12 men, and for a jury of 6 in municipal and inferior Courts, it is significant that section 34 of article III does not apply the provision "to summon and impanel" to all jurors if by that section they intended to prohibit special legislation for the drawing of jurors in municipal Courts. These considerations lead to the logical conclusion, it would seem, that the act in question is not obnoxious to article III, section 34, subd. 7.

Having disposed of the first question, it now becomes necessary to inquire whether or not the act in question is prohibited by subdivision 9 of section 34, above set out. Whether the determination of this question is a judicial one or not was for a while a mooted question in this State. In *Buist* v. *City Council,* 77 S. C. 260,

57 S. E. 862, the Court was divided upon the point, Mr. Justice Jones dissenting from the view that the question was a legislative one, and Mr. Justice Woods reserving his opinion upon that particular point. In the case of *Board of Township Commissioners* v. *Buckley,* 82 S. C. 352, 64 S. E. 163, as late as 1908, the point had not been finally settled by the Court. However, in the case of *Barfield* v. *Mercantile Co.,* 85 S. C. 186, 67 S. E. 158, it was finally determined that the question is a judicial one.

It is obvious that subdivision 9, *supra,* does not apply to legislation upon those subjects as to which the General Assembly, under the authority of the Constitution, may legislate particularly, even though the same be special in character. *City of Greenville* v. *Foster,* 101 S. C. 318, 85 S. E. 769; *State ex rel. Spencer* v. *McCaw,* 77 S. C. 355, 58 S. E. 145.

This being true, the question here involved makes it necessary that subdivision 9, prohibiting special legislation under certain conditions, be construed in connection with article V, section 1, and article VIII, section 1, of the Constitution.

The former section provides: "The judicial power of this State shall be vested in a Supreme Court, in two Circuit Courts, to wit: A Court of Common Pleas having civil jurisdiction and a Court of General Sessions with criminal jurisdiction only. The General Assembly may also establish county Courts, municipal Courts and such Courts in any or all of the counties of this State inferior to Circuit Courts as may be deemed necessary, but none of such Courts shall ever be invested with jurisdiction to try cases of murder, manslaughter, rape, or attempt to rape, arson, common law burglary, bribery or perjury." This section does not relate to the Courts of the magistrate, who, under section 20 of article V, must be appointed and commissioned "for each county" in the State, and whose powers and jurisdiction are prescribed by sections 21 and 23 in each county in the State.

For the reason, therefore, that the powers and jurisdiction of magistrates are practically uniform, it might be urged with greater force that juries in such Court be drawn uniformly throughout the State. But, as to municipal Courts, power has been given in the above section to the General Assembly to establish such Courts "in any or all of the counties." It, therefore, has the right to establish but a single Court of this character in the State; for the right to establish in "any" county confers the right to establish in but a single county or town. With regard to this power the General Assembly has exercised it in the case of the civil and criminal Court of the city of Charleston, so far as it relates to inferior Courts. Under sections 1421 and 1434, inclusive, of the Civil Code 1912, and the act of 1913 (28 Stat. at Large, p. 79), amendatory thereof, the Civil and Criminal Court of Charleston was established. Under the sections of the Code referred to this Court has the same jurisdiction as the judicial magistrate's Court in said city, and a civil jurisdiction up to $500. The presiding Judge of the Court must be an attorney elected for a term of four years. A special method for drawing and striking jurors is provided by section 1425, which is different from the method employed in magistrate's Courts, or any other Courts in the State. The jury box from which a venire is drawn must be prepared by the board of registration, together with the county treasurer and auditor, and must contain the names of not less than 1,500 qualified electors. All steps taken in the preparation of the 1,500 names are elaborately provided for in said act.

The constitutionality of the acts creating said Court was upheld in *Grimball* v. *C. W. Parham & Co.,* 96 S. C. 446, 81 S. E. 186, on the ground that the Court is an "inferior Court" within the meaning of that term as used in article V, section 1. The point was not raised in this case that the acts therein questioned violated article III, section 34, subd. 9, but under the case of *City of Greenville* v. *Foster, supra,*

such contention could not have been sustained. The Charleston Court is unique, there being no such Court in any other county in the State, and in no Court in the State is the jury drawn in the same manner. Certainly under the case of *Grimball* v. *Parham, supra,* such Courts may be established in other counties and with a varied jurisdiction and incidents; for the Constitution does not prescribe a uniformity of jurisdiction for such Courts, but only prescribes certain cases to which its jurisdiction shall not extend. There is no provision in the Constitution, nor is there any valid reason, why the cities of Columbia, Greenville, Spartanburg, Anderson, and others should not have such "inferior" Courts with a varying jurisdiction to suit local conditions. If so, why should the drawing of a jury in such Courts be uniform? The latter is only an incident of the former. The establishment of municipal Courts is authorized by the same section of the Constitution, and unquestionably municipal Courts and inferior Courts are placed upon the same footing as to the legislative power of establishment in any or all counties of the State. If that be true, then certainly the method of drawing and impaneling a jury is a mere incident of the Court, and could be provided for each Court and differently in each Court, just as the jurisdiction, officers, and minor functions and powers of such Court could be provided for. This view is not unreasonable. It may well be that difference in location, social, industrial, and political conditions, might in two cities of the same size authorize a different jurisdiction and authority in the making and enforcement of municipal ordinances, and certainly in direct relation to these matters would be the preparation of a jury list and the method of drawing juries. For example, it is a well recognized fact that enforcement of certain laws is more difficult in seaport towns than in inland towns. As the proceedings and jurisdiction of municipal Courts become less summary and charged with the adjudication of more important rights the more care and greater safeguards

should be thrown about the drawing of juries. There is no impelling reason such as influenced the constitutional convention in making uniform the jury laws as applied to grand and petit jurors applicable to a municipal Court whose jurisdiction has largely to do with the enforcement of local ordinances adapted to the demands of local conditions and necessities.

Under section 3001 of the Code, above set out, the city of Greenville established a recorder's Court. In the case of *City of Greenville* v. *Foster, supra,* it was contended that the Court was illegal, in that the act in question was an, improper delegation of legislative power under article V, section 1, of the Constitution. The Court held that this section must be construed in connection with article VIII, section 1, which is as follows: "The General Assembly shall provide by general laws for the organization and classification of municipal corporations. The powers of each class shall be defined so that no such corporation shall have any powers or be subject to any restrictions other than all corporations of the same class. Cities and towns now existing under special charters may reorganize under the general laws of the State, and when so reorganized their special charters shall cease and determine."

Discussing the above section in connection with section 1 of article V, the Court in the decision in *City of Greenville.* v. *Foster,* declares, at page 325 of 101 S. C., page 770 of 85 S. E., "These two sections must be construed together, and, when so construed, it is apparent that the General Assembly may either establish *such municipal Courts as it may deem necessary, in any or all the counties of this State,* or it may provide by general laws for the organization and classification of municipal corporations." (Italics added.)

If article VIII, section 1, which it is contended the act under consideration contravenes, had been considered alone in the case of *Greenville* v. *Foster,* and not considered in connection with article V, section 1, it is difficult to see

how section 3001 of the Civil Code could have been sustained; for, under the law as it now stands, section 3001, as amended, gives to the city council of cities and towns of not less than 1,500 nor more than 20,000 the right to establish municipal Courts. In cities between 20,000 and 50,000 inhabitants the General Assembly has directly established municipal Courts, and cities of less than 1,500 and more than 50,000 inhabitants are, so far as these enactments are concerned, on the same basis. It is obvious, then, that construing these two sections of the Constitution together and in connection with the case of *City of Greenville* v. *Foster, supra,* in which the Court positively declares, "The General Assembly may either establish such municipal Courts as it may deem necessary, in any or all counties of this State, or provide by general laws," etc., the General Assembly had authority to create directly a municipal Court for the city of Columbia, with such jurisdiction as it desired to confer within the constitutional limits, and to provide for a jury and other functional incidents in such manner as in its wisdom it deemed most conducive to the administration of justice in such Court, just as it has done in the city of Charleston, giving to that Court a jury system different from all other Courts in this State, the constitutionality of which has been upheld as an "inferior" Court in the case of *Grimball* v. *Parham,* as shown above. What it has the right to do with an "inferior" Court it can also do with a municipal Court under section 1 of article V; for the same provisions in the section are applicable to both kinds of Courts. It is too clear to admit of argument that it was not the intention of the Constitution to make the creation, jurisdicion, and incidents of a municipal Court the subject of a general law, as such law has been defined by the Court.

In *Dean* v. *Spartanburg County,* 59 S. C. 110, 37 S. E. 226, a general law is defined as follows: "In order that a law may be general, it must be of force in every county in the State, and while it may contain special provisions making

its effect different in certain counties, those counties cannot be exempt from its entire operation."

As has been already shown under the positive and express language of section 1, art. V, and the equally explicit language in the case of *City of Greenville* v. *Foster,* the General Assembly may establish such Courts "in any or all" of the counties, and the General Assembly has such authority to enact such laws in every county in the State. The law need not, therefore, be general in the constitutional sense, and does not contravene the provision prohibiting special laws. It, therefore, could not contemplate a method of drawing juries for such Court which would be in operation in every county in the State, as in the case of Courts of magistrate and Circuit Courts, which are established by the Constitution itself in every county, and the jurisdiction defined. It is also quite evident that, if the Constitution authorizes the General Assembly to enact a law which need not be general —that is to say, operative in every county in the State— there is no sound reason why the General Assembly could not in extending such legislation to several counties or to all counties enact special provisions with regard to each. Even in the case of mandatory general laws the Constitution permits such legislation.

In the case of *State ex rel. Spencer* v. *McCaw,* 77 S. C., at page 356, 58 S. E., at page 146, the Court says: "A statute, therefore, which could be enacted as a special provision in a general law will not be declared unconstitutional merely because it is in form a separate act, but will be regarded as an amendment of the general law upon the subject. *Grocery Co.* v. *Burnett,* 61 S. C. 205, 39 S. E. 381, 58 L. R. A. 687. In that case the Court uses this language: 'We think it safe to say that, if it be competent for the legislature, while enacting a general law, to enact special provisions therein, it is also competent to enact similar special provi-

sions by way of amending a general law. The former power would necessarily include the latter.' " See, also, *Fooshe* v. *McDonald,* 82 S. C. 22, 63 S. E. 3.

It is, therefore, ordered that the judgment of the recorder's Court be reversed, and the case remanded for trial by a jury under the provisions of the act of 1916 hereinabove set out.

*Messrs. C. S. Montieth* and *W. H. Cobb,* for appellant, cite: 40 S. C. 373; 15 S. C. 120; 62 S. C. 247; 101 S. C. 318; 99 S. C. 7.

*Mr. W. C. McLain,* for respondent, relies on authorities cited in order.

September 14, 1916.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

For the reasons therein stated, the judgment of the Circuit Court is affirmed.